

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
03/22/2010

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 09-37642-H4-7 |
| LOTS BY MURPHY, INC. | § | Chapter 7 |
| | § | |
| DEBTOR | § | |

# MEMORANDUM OPINION ON JOINT MOTION OF TRUSTEE AND INTERESTED PARTY ARCHIE HART TO DISMISS BANKRUPTCY
[Doc. No. 9]

## I. INTRODUCTION

In this Chapter 7 case, the Court must decide whether to grant the Motion to Dismiss Bankruptcy (the Motion to Dismiss), filed by the Trustee and Interested Party Archie Hart (Hart). Lots by Murphy, Inc. (the Debtor) vigorously opposes the Motion to Dismiss. The Debtor argues that bankruptcy law does not prohibit a company with no assets from filing a Chapter 7 petition; therefore, the Debtor asserts that it filed its petition in this case in good faith and that the Motion to Dismiss should be denied. Hart and the Trustee strongly disagree. For his part, Hart argues that the bankruptcy filing was done merely to stay a state court suit against the Debtor which he was prosecuting. The Trustee has joined Hart and asserted that this Chapter 7 case serves no legitimate purpose under the Bankruptcy Code. For the reasons stated herein, this Court grants the Motion to Dismiss.

## II. FINDINGS OF FACT

1. The Debtor commenced business in 2004 for the purpose of selling five unimproved real estate

lots. [Testimony of R.E. Blue].[1]

2. The Debtor sold Hart one of the lots in November of 2005. [Testimony of R.E. Blue].

3. In April of 2006, Hart filed suit in the 151st Judicial District Court of Harris County, Texas regarding the lot that he had purchased the previous year (the State Court Suit). The suit is styled: *Archie Hart v Lots by Murphy, Inc., Kickerillo Building Company, LP, and Bob Guerin*, Cause No. 2006-49572. [Doc. No. 1, Statement of Financial Affairs].

4. The Debtor sold the remaining four lots in February of 2008. [Testimony of R.E. Blue].

5. On October 7, 2009, the Debtor filed a voluntary Chapter 7 bankruptcy petition. [Doc. No. 1]. At the time of this filing, the State Court Suit was pending, with trial set for October 19, 2009. [Doc. No. 1, Statement of Financial Affairs]. There has been no trial, no judgment rendered, nor a determination regarding liability or damages in the State Court Suit. [Testimony of R.E. Blue].

6. At the time of filing, the Debtor had no active or ongoing business. Indeed, it had not conducted any business for over a year. Moreover, the Schedules filed by the Debtor show that it has no assets whatsoever. [Doc. No. 1, Summary of Schedules].

7. Hart is listed on the Schedules as an unsecured creditor with a claim that is contingent, unliquidated, and disputed. [Doc. No. 1, Schedule F]. The only other non-insider creditor listed is the firm who represents Hart in the State Court Suit, and, as with Hart's claim, the Debtor has scheduled this claim as contingent, unliquidated, and disputed.[2] There are no other non-insider

---

[1] Mr. Blue, who is the President and 50% shareholder of the Debtor, testified at the hearing on the Motion to Dismiss.

[2] This Court is uncertain why the Debtor listed Hart's law firm as a creditor, as any attorneys' fees awarded in the State Court Suit will be awarded to Hart, not to his law firm. *See e.g., Murrco Agency, Inc. v. Ryan*, 800 S.W.2d 600, 604 (Tex.App.—Dallas 1990). The Court finds that Hart's law firm is not a creditor in this case.

2

creditors listed in the Schedules.

8. The only other creditors who are scheduled are insiders—*i.e.*, Jim Rooney and R.E. Blue (the shareholders of the Debtor). The Debtor has scheduled the claims of these two insiders each at $129,480.86. [Doc. No. 1, Schedule F]. In the Summary of Schedules, the Debtor represents that its total liabilities are $258,961.72—which is the sum of the two claims of the insiders.

9. Anyone else who is scheduled is not scheduled as a creditor, but rather as a party-in-interest with the phrase "Notice Only" placed next to the name. These names are either co-defendants in the State Court Suit or attorneys for co-defendants in the State Court Suit. [Doc. No. 1, Schedule F].

10. No proofs of claim have been filed in this case.

### III. CONCLUSIONS OF LAW

**A.     Jurisdiction and Venue**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This particular dispute is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (O), and the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that an "[a]dversary [p]roceeding is a core proceeding under 28 U.S.C. § 157(b)(2) even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper

pursuant to 28 U.S.C. § 1408.

B.  **Under Fifth Circuit Precedent, a Chapter 7 Petition Should Be Dismissed if the Purposes of Bankruptcy Will Not Be Fulfilled.**

The Motion to Dismiss requests that the Court dismiss the Debtor's Chapter 7 petition as being filed in bad faith. A finding of bad faith can be cause for dismissal of a Chapter 7 proceeding under section 707(a).[3] *In re Richard F. Carbaugh*, 299 B.R. 395, 397-98 (Bankr. N.D. Tex. 2003); *See Little Creek Dev. Co. v. Commonwealth Mort. Corp. (In re Little Creek Dev. Co.)* 779 F.2d 1068, 1071-72 (5th Cir. 1986). Access to the unique remedies of the bankruptcy courts is predicated on the good faith of a debtor. *See Little Creek,* 779 F.2d at 1071-72. In *Little Creek,* the Fifth Circuit wrote extensively on the importance of a debtor's good faith in filing a bankruptcy petition:

> Bankruptcy is an equitable remedy whereby a debtor is clothed with the protection of an automatic stay, preventing his creditors from acting against him for a period of time, in order to facilitate rehabilitation or reorganization of his finances and to promote a "fresh start" through the orderly disposition of assets to satisfy his creditors. Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings. Such a standard furthers the balancing process between the interest of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands."

---

[3] Any reference hereinafter to "the Code" refers to the United States Bankruptcy Code. Further, reference to any section (*i.e.* §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code. Reference to a "Rule" or "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure.

4

*Little Creek,* 779 F.2d at 1071-72 (internal citations omitted).

The Fifth Circuit has instructed courts to "balance the equities and weigh the 'benefits and prejudices' of a dismissal" in determining whether to dismiss a bankruptcy proceeding for bad faith. *Peterson v. Atlas Supply Corp.* (*Matter of Atlas Supply Corp.*), 857 F.2d 1061, 1063 (5th Cir. 1988). In *Little Creek,* the Fifth Circuit provided that this analysis involves a wide array of variables, stating that:

> Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on the spot evaluation of the debtor's financial condition, motives, and the local financial realities. Findings of lack of good faith . . . have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors, rather than on any single datum."

*Little Creek,* 779 F.2d at 1071-72.

In order to assist trial courts with their analysis of whether a debtor's filing for relief is in good faith, the *Little Creek* Court reviewed common fact patterns present in cases where a filing was found to be in bad faith. *See id.* at 1073. Generally, these cases involved an asset poor debtor, with no employees other than the principals involved, no cash flow, often only one creditor, and a pending state court suit between the debtor and a creditor.[4] *Id.*

---

[4] Though specifically oriented towards Chapter 11 cases, the Court believes this description is applicable in the case at bar to the extent it illuminates the principles the Fifth Circuit applies in evaluating bad faith filings. Generally, bad faith has been found in cases where:

> The Debtor has only one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. §§ 361, 362(d)(1), 363(e), or 364(d)(1). Typically there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property. There are sometimes allegations of wrongdoing by the debtor or its principals. The "new debtor syndrome," in which a

The Fifth Circuit, in *Little Creek*, instructed that in such cases, "resort to the protection of the bankruptcy laws is not proper under these circumstances because" neither of the twin pillars of bankruptcy—the discharge of the debtor and the satisfaction of valid claims against the estate—will be achieved. *See id.* ("[T]here is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's 'terminal euphoria.'"). When the purposes of the bankruptcy system (*i.e.*, the twin pillars) will not be achieved, a bankruptcy proceeding "has lost its *raison d'etre*." *See id.* (quoting *Winshall Sealor's Trust*, 758 F.2d 1136, 1137 (6th Cir.1985), *overruled on other grounds by Toibb v. Radloff*, 501 U.S. 157 (1991)) ("[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'etre*."). "Neither the bankruptcy courts, nor the creditors should be subjected to the costs and delays of a bankruptcy proceeding under such conditions." *Little Creek*, 779 F.2d at 1073. Applied to the Fifth Circuit standard, provided in *Atlas Supply*, where a court must "balance the equities and weigh the 'benefits and prejudices' of a dismissal"—when none of the purposes of bankruptcy will be fulfilled by proceedings in bankruptcy court, there are no prejudices for a court to consider. In such a case, the court should dismiss the bankruptcy case as having been filed in bad faith.

### C. The Twin Pillars of Bankruptcy are Discharge of the Debtor and Payment of Claims, and Neither Objective Can Be Satisfied In This Case.

As noted above, the twin pillars of bankruptcy are: (1) the discharge of the debtor, in order to obtain a "fresh start"; and (2) the satisfaction of valid claims against the estate. *See Fin.*

---

one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, though it does not uniquely categorize, bad faith cases.

*Little Creek*, 779 F.2d at 1073.

6

*Sec. Assur. v. T-H New Orleans Ltd. P'ship* (*In re T-H New Orleans Ltd. P'ship*), 188 B.R. 799, 807 (E.D. La. 1995) *aff'd Fin. Sec. Assur. v. T-H New Orleans Ltd. P'ship* (*In re T-H New Orleans Ltd. P'ship*), 116 F.3d 790 (5th Cir. 1997). Here, neither of these objectives can be satisfied.

First, the Debtor, because it is a corporation, may not obtain discharge from a Chapter 7 filing. 11 U.S.C. § 727(a)(1). Therefore, the first pillar of the bankruptcy system would not be achieved by keeping this case on the docket.

Second, because the Debtor has no assets whatsoever for the Trustee to liquidate to pay claims, the second pillar is likewise unachieveable. *See* [Finding of Fact No. 6]. The Court acknowledges that the first pillar cannot ever be met if a corporation files a Chapter 7 petition because the statute expressly prohibits a corporation in Chapter 7 from receiving a discharge. However, the second pillar can be satisfied even if the debtor corporation's assets are such that claims can only be paid a very small percentage on the dollar. The key is that at least some portion of claims, however small, be paid through liquidation of assets. Here, there are simply no assets in this estate, and therefore even a "pennies on the dollar" scenario is impossible.

Further, the rationale behind the second pillar is that "[b]ankruptcy maximizes the repayment of an insolvent debtor's debts by overcoming the collective action (or musical-chairs) problem that arises when each of the debtor's unsecured creditors races to seize the debtor's assets, when a more orderly liquidation, or a reorganization, would yield a larger total recovery." *U.S. v. Frontone*, 383 F.3d 656, 659 (7th Cir. 2004). Here, there is only one non-insider creditor: Hart. [Finding of Fact No. 7]. Hence, there have never been multiple creditors racing to seize the Debtor's assets—even assuming the Debtor had any assets, which it does not. [Finding of Fact

7

No. 6]. Under these circumstances, there is no collective action problem to overcome. Thus, this particular Chapter 7 case offers no advantages over state law remedies for the satisfaction of valid claims against the Debtor. Accordingly, the second pillar of the bankruptcy system would not be furthered by keeping this case on the docket.

Because neither pillar of bankruptcy will be achieved, none of the parties to this bankruptcy proceeding will be prejudiced by dismissal. The Debtor will not be prejudiced by a dismissal because the Debtor will not receive a discharge from its Chapter 7 case in any event. Hart, the sole non-insider creditor, will not be prejudiced because bankruptcy proceedings offer no advantages to his enforcement of any rights he has against the Debtor.[5] In fact, Hart will benefit from the dismissal of this Chapter 7 proceeding because it will allow him to return to prosecuting the State Court Suit and avoid the delays of a bankruptcy case.

In this Court's view, the balancing of the equities favors dismissal of this Chapter 7 case. This Court's on the spot evaluation of the debtor's financial condition, motives, and the local financial realities leads it to believe that no legitimate end will be served by keeping the Debtor's Chapter 7 case on the docket. No party will legitimately benefit from keeping this case on the docket, whereas keeping the case on the docket will prejudice Hart, the sole non-insider creditor, by delaying the pending State Court Suit.

---

[5] Schedule F lists three other creditors as holding unsecured nonpriority claims. [Finding of Fact Nos. 7 & 8]. However, two of these creditors are insiders. [Finding of Fact No. 8]. The other so-called creditor is the firm representing Hart in the State Court Suit; and this Court is at a loss to understand why the Debtor is listing this firm as a creditor, as any attorneys' fees awarded to Hart in the State Court Suit are payable to him, not his law firm. Indeed, the Court has found that this firm is not a creditor of the Debtor. [Finding of Fact No. 7]. It strikes the Court as inappropriate to consider potential prejudice to the insider creditors, particularly when these two individuals are the sole shareholders of the Debtor and participated in the decision to have the Debtor file a Chapter 7 petition. To consider prejudice to these two individuals would open the door to allowing the "removal" of state court cases to bankruptcy court for proceedings which serve no other purpose than to deny a party its venue of choice and delay or obstruct that party's state law remedies.

D.  **The Case Law Cited By the Debtor in Support of its Opposition to the Motion to Dismiss is Inapposite.**

The Debtor contends that two cases support its contention that it filed its Chapter 7 petition in good faith and that the Motion to Dismiss should be denied: *In re Richard F. Carbaugh*, 299 B.R. 395 (Bankr. N.D. Tex. 2003) and *Peterson v. Atlas Supply Corp. (Matter of Atlas Supply Corp.)*, 857 F.2d 1061 (5th Cir. 1988). While these two cases reach a favorable result for their respective debtors, neither case supports the Debtor's assertion that the Motion to Dismiss should be denied.

*Carbaugh* has some similarities to the instant case. There, the debtor had filed bankruptcy in the midst of a long and expensive state court suit. *Carbaugh*, 299 B.R. at 399. In fact, the debtor there even admitted that avoiding the state court litigation was a primary reason for the filing of his Chapter 7 petition. The *Carbaugh* court decided, however, that dismissal was not appropriate for a variety of reasons, including, importantly for the analysis here, that the "[d]ebtor has other creditors. . . . [t]he case is not a single creditor fight," and that there were assets which could potentially be "set aside for the benefit of all creditors." *Carbaugh*, 299 B.R. at 399 (citing *cf. Little Creek*, 779 F.2d 1068). In *Carbaugh*, the debtor, because he was an individual, could obtain discharge, and, as the court there stressed, there was potential for the payment of multiple creditors' valid claims against the estate. Thus, the twin pillars of bankruptcy could both be fulfilled by further bankruptcy proceedings in *Carbaugh*. These facts stand in stark contrast to the case at bar, where the Debtor may not obtain discharge, there is only one non-insider creditor, and there are no assets which could be potentially distributed to that creditor.

*Atlas Supply* is similar to the case at bar only in the sense that it has to do with a

9

corporation filing for Chapter 7 subsequently facing a motion to dismiss. There, two daughters of a co-founder of Atlas Supply Corporation sought to dismiss Atlas' bankruptcy filing. *Matter of Atlas Supply Corp.*, 857 F.2d at 1062. After the co-founder suffered a stroke, the sole remaining active director appointed two replacement directors. *Id.* At a special meeting, the three directors resolved to file a Chapter 7 petition because of the company's insolvency. *Id.* The daughters then moved to dismiss the bankruptcy under section 707(a) on the grounds that these directors did not have the power to authorize the petition's filing. *Id.* The bankruptcy court denied the motion to dismiss on the grounds that, *inter alia*, dismissal would prejudice the creditors in that case. *Id.* The district court, and then the Fifth Circuit, both affirmed the bankruptcy court's rejection of the motion to dismiss.

In *Atlas Supply*, the Fifth Circuit provides that the bankruptcy court did not abuse its discretion in doing so because "[n]either Atlas [the debtor in that case] nor its creditors stands to benefit by dismissal," and, further, because there was evidence that the creditors would be prejudiced since "there was no guarantee that Atlas's assets would be preserved if the trustee lost control." *Id.* at 1064. Thus, by continuing the bankruptcy proceedings in *Atlas Supply*, the second pillar of bankruptcy—the payment of valid claims against the estate—would be achieved. Here, this Court has already found that the sole non-insider creditor will not be prejudiced by dismissal. On the contrary, the sole non-insider creditor will benefit from dismissal; and indeed, that one creditor (*i.e.*, Hart) wants the case dismissed.

In sum, none of the reasons supporting the continuation of the Chapter 7 cases in *Carbaugh* and *Atlas Supply* are applicable in the dispute at bar. Contrary to the explicit language of *Carbaugh*, functionally, this *is* a one-creditor proceeding. The only non-insider creditor is Hart,

and he will not be prejudiced by a dismissal of the Debtor's Chapter 7 petition. [Finding of Fact No. 7]. Contrary to both *Carbaugh* and *Atlas Supply,* there can be no battle over assets of the estate because there are no assets. [Finding of Fact No. 6]. Finally, no discharge can be achieved by the Debtor. In conclusion, neither *Atlas Supply* nor *Carbaugh* supports the Debtor's argument that this Court should deny the Motion to Dismiss.

## IV. CONCLUSION

Corporations with no assets should not file Chapter 7 petitions because neither of the twin pillars of bankruptcy can be achieved. Moreover, such a filing wastes the time and energies of the Chapter 7 trustee who is appointed to administer the case; the trustee should not be required to spend time on cases with no assets. For these reasons, the instant case should not be kept on the docket. Indeed, at this juncture, the Debtor's Chapter 7 case serves no purpose other than to delay the State Court Suit. Accordingly, the Court concludes that the Motion to Dismiss should be granted.

An order consistent with this Opinion will be entered on the docket simultaneously with the entry on the docket of this Opinion.

Signed on this 22nd day of March, 2010.

_____
Jeff Bohm
United States Bankruptcy Judge